UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RAILROAD MAINTENANCE AND INDUSTRIAL WELFARE FUND, By and Through Its Board of Trustees,<br><br>    Plaintiff,<br><br>v.<br><br>ELITE LANDSCAPE MANAGEMENT, INC.,<br><br>    Defendant. | Cause No. 20-cv-3071 |

## COMPLAINT

COMES NOW Plaintiff, Railroad Maintenance and Industrial Health and Welfare Fund, by undersigned Counsel, and states as follows for its Complaint against Defendant, Elite Landscape Management, Inc.:

### Parties

1.  Plaintiff Railroad Maintenance and Industrial Health and Welfare Fund (hereinafter "Plaintiff," or "Welfare Fund") is an employee benefit plan within the meaning of Sections 3(1) and (3), 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1002(1), (3), 1132 and 1145. Welfare Fund's Board of Trustees are fiduciaries within the meaning of Section 3(21)(A) and 502 of ERISA, 29 U.S.C. §§ 1002(21)(A) and 1132, and are authorized to maintain this cause of action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to enforce the terms of an ERISA plan.

2.  Welfare Fund is administered and receives and processes fringe benefit contributions in Springfield, Sangamon County, Illinois.

3.     Defendant Elite Landscape Management, Inc. ("Defendant," or "Elite Landscape Management") is, was and at all relevant times has been, an employer in an industry affecting commerce within the meaning of Sections 3(5), (11), (12) and 515 of ERISA, 29 U.S.C. §§ 1002(5), (11), (12) and 1145 and of §§ 2(2), (6) and (7) of the Labor-Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §§ 152(2), (6) and (7).

4.     Elite Landscape Management's principal office is located in, or around the greater Chicago, Illinois area.

## Jurisdiction and Venue

5.     This Court has jurisdiction over Welfare Fund's claims by virtue of §§ 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

6.     This Court has personal jurisdiction over Elite Landscape Management pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e).

7.     Venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## Facts Common To All Counts

8.     Elite Landscape Management is, and at all relevant times has been, signatory to a "Memorandum of Agreement Landscape Construction Labor Agreement (Equipment Operators)" ("Memorandum of Agreement") with Local 150, International Union of Operating Engineers, AFL-CIO ("Union"). *See*, **Exhibit A**.

9.     Pursuant to the Memorandum of Agreement, Elite Landscape Management "recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION. *See*, **Exhibit A**, para. 1 (emphasis original).

10. Pursuant to **Exhibit A**, Elite Landscape Management agreed to "…adopt the Master Agreement commonly referred to as the Landscape Construction Labor Agreement (covering Landscape Equipment Operators and Leadman Operators) entered into by and between the UNION and the ILLINOIS LANDSCAPE CONTRACTORS BARGAINING ASSOCIATION ("ILCBA" or "the Association")." *See*, **Exhibit A**, para. 2.

11. A true, accurate and correct copy of the current Landscape Construction Labor Agreement ("Master Agreement") is attached hereto as **Exhibit B**.

12. Elite Landscape Management agreed "…to be bound by the terms and conditions of that Master Agreement and the Agreement and Declaration of Trusts referenced therein, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein." Elite Landscape Management further acknowledged "…that he/she has received a copy of the aforesaid Master Agreement, that he/she has received same, and that he/she is aware of the obligations arising thereunder." *See*, **Exhibit A**, para. 2.

13. Pursuant to the Master Agreement, Elite Landscape Management agreed to pay contributions to Welfare Fund on behalf of its eligible bargaining unit employees. *See*, **Exhibit B**, Article 17.

14. Contributions to Welfare Fund are due by the 15th day of the month following the month for which contributions are required to be paid. *See*, **Exhibit B**, § 17.4.

15. Pursuant to the Master Agreement, Elite Landscape Management agreed "to permit an accountant designated by the Fund to examine payroll and social security reports on demand to determine the amounts due to the Fund." *See*, **Exhibit B**, § 17.5.

16.     In the event an employer becomes delinquent in its obligation to report and pay contributions, the employer is subject to late fees, Liquidated Damages, late fees, and interest. *See,* **Exhibit B**, § 17.5.

## COUNT I

## (TO COMPEL AN AUDIT)

COMES NOW Plaintiff Railroad Maintenance and Industrial Health and Welfare Fund, by undersigned Counsel, and states as follows for Count I of its Complaint against Defendant, Elite Landscape Management, Inc.:

17.     Welfare Fund restates and reincorporates paragraphs 1 through 16 of its Complaint as if full set forth herein.

18.     Elite Landscape Management employs, employed and at all relevant times has employed, individuals who are members of the bargaining unit represented by Union.

19.     Said individuals are participants in Welfare Fund.

20.     By employing these individuals, Elite Landscape Management is, was and has been required to submit reports and to pay contributions to Welfare Fund.

21.     Elite Landscape Management submitted reports and paid contributions to Welfare Fund in the past.

22.     During 2019, Welfare Fund's Trustees determined to conduct a payroll examination audit of Elite Landscape Management in order to determine Elite Landscape Management' compliance with its fringe benefit reporting and payment obligations.

23.     Elite Landscape Management, however, failed and refused to schedule an audit.

24. Further demand was made upon Elite Landscape Management to schedule an audit, but again Elite Landscape Management failed to do so. *See*, **Exhibit C**.

25. Audits are specifically authorized by the Master Agreement, **Exhibit B**.

26. Audits are further within the scope of other equitable relief available to the Trustees in an action pursuant to ERISA. 29 U.S.C. § 1132(g)(2)(E).

27. Inasmuch as Elite Landscape Management has failed and refused to cooperate with an audit, Welfare Fund has no adequate remedy at law, and is suffering and will continue to suffer immediate and irreconcilable injury and damage, unless Elite Landscape Management is ordered to submit to an audit.

28. Welfare Fund is further entitled to an award of the contributions determined to be due, along with Liquidated Damages, late fees, pre- and post-judgment interest, auditing and/or accounting fees and attorneys' fees and costs.

29. As a result of the acts and omissions complained of herein, Welfare Fund has been harmed.

WHEREFORE, Railroad Maintenance and Industrial Health and Welfare Fund respectfully prays that the Court:

    a. Enter Judgment for Welfare Fund and against Elite Landscape Management, Inc.;

    b. Enter Orders for temporary, preliminary and permanent injunctive relief that Elite Landscape Management submit to an audit;

    c. Enter an Order awarding Welfare Fund any and all contributions determined to be due by audit;

 d. Enter an Order awarding statutory and contractual Welfare Fund Liquidated Damages, penalties, late charges, and interest;

 e. Enter an Order awarding Welfare Fund the costs of the audit;

 f. Enter an Order awarding Welfare Fund its attorneys' fees and costs;

 g. Enter an Order awarding Welfare Fund appropriate post-judgment interest;

 h. Enter Orders for such further relief as the Court deems proper in the premises.

Respectfully Submitted,

CAVANAGH & O'HARA LLP

 /s/ James R. Kimmey
JAMES R. KIMMEY, No. 6314932
101 W. Vandalia St., Suite 245
Edwardsville, IL  62025
(618) 692-5250 (tel.)
(618) 692-5254 (fax)
jaykimmey@cavanagh-ohara.com

Attorneys for Plaintiff